IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARYLAND AVIATION ADMINISTRATION** *et al*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 21-02619-JMC |
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY**, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Maryland Aviation Administration ("MAA") and Starr Indemnity and Liability Company ("Starr") bring this insurance case against Defendant Philadelphia Indemnity Insurance Company ("PHLY"), seeking declaratory judgment and alleging breach of contract. Now pending before the Court is Plaintiffs' Motion for Partial Summary Judgment. (ECF No. 21). Defendant filed a Response (ECF Nos. 22), and Plaintiffs replied (ECF No. 23). The Court finds that no hearing is necessary.  Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

**I.   BACKGROUND**

Plaintiff MAA owns and operates Baltimore/Washington International Thurgood Marshall Airport (BWI) in Baltimore, Maryland. (Amended Complaint, ECF No. 16 at 4). Chimes International Limited (Chimes Ltd.) and Chimes, Inc. (collectively "Chimes"), are related corporate entities part of the Chimes family of corporations. *Id.* Chimes, Inc., is contracted with MAA to provide janitorial services at BWI. *Id.* Chimes' services include the routine and comprehensive cleaning of all hallways and walking surfaces, among other areas, to maintain the cleanliness, appearance, and safety of the facilities. *Id.* at 4-6. Defendant PHLY provides insurance

coverage for Chimes Ltd. and Chimes, Inc., which includes protection for work done by Chimes, Inc., at BWI. (Amended Complaint, ECF No. 16 at 3). The contract between PHLY and Chimes lists MAA as an additional insured to provide coverage for claims against MAA related to or arising out of negligence by Chimes, Inc. (ECF No. 21, Ex. 7).

In June 2020, a visitor of BWI airport commenced a civil action ("first lawsuit") in Maryland state court against MAA and Chimes Ltd. to recover for injuries she suffered from a slip and fall in December 2018 at the airport as a result of MAA and Chimes Ltd.'s alleged negligence. (Amended Complaint, ECF No. 16 at 1). Plaintiff MAA subsequently tendered the lawsuit to Chimes and Defendant PHLY for defense and indemnity. *Id.* Defendant PHLY denied MAA's tender and refused to defend MAA in the suit. *Id.* at 2. MAA procured the services of its own insurer, Plaintiff Starr, to defend MAA in the lawsuit, which Starr effectively settled. *Id.*

In August 2020, another visitor commenced a separate civil action ("second lawsuit") in Maryland state court against MAA, Chimes Ltd., and Chimes, Inc., to recover for injuries she suffered from a slip and fall in September 2018 at the airport as a result of the alleged negligence of MAA, Chimes Ltd., and Chimes, Inc. (Amended Complaint, ECF No. 16 at 2). Similar to the first lawsuit, Plaintiff MAA tendered this suit to PHLY, Chimes Ltd., and Chimes, Inc., for defense and indemnity. *Id.* PHLY denied MAA's tender and has declined to defend MAA in the ongoing second lawsuit. *Id.* Plaintiff Starr is currently defending MAA in the second lawsuit. *Id.*

Plaintiffs MAA and Starr bring this lawsuit alleging PHLY breached its contract in failing to defend MAA in both lawsuits. (Amended Complaint, ECF No. 16). Plaintiffs seek monetary relief to account for Starr's defense and settlement in the first lawsuit, as well as Starr's ongoing work in the second lawsuit,[1] and Starr's preparation and work in the instant case. *Id.*

---

[1] Plaintiffs seek to recover damages from the second lawsuit, which will be quantified when that case is over. (ECF No. 21, Ex. 9 at 13-14).

Plaintiffs' current Motion for Partial Summary Judgment seeks declaratory relief for the defense costs, including attorneys' fees, incurred by Plaintiff Starr in defending Plaintiff MAA in the ongoing second lawsuit. Plaintiffs principally contend that PHLY has a duty to defend MAA in the second lawsuit because the underlying tort allegations fall squarely within the protections afforded by the contract between Chimes and PHLY naming MAA as an additional insured. (ECF No. 21, Ex. 9). Defendant PHLY's brief response asserts that the second lawsuit alleges that Plaintiff MAA was separately and independently negligent in its own right, not simply from the acts of Chimes, thereby resulting in exclusion of coverage for MAA as an additional insured. (ECF No. 22). The parties do not dispute the facts of this case, but rather differ in their interpretations of the claims in the underlying complaint and the corresponding applicable Maryland law. For the reasons set forth below, the Court finds that that the factual allegations in the second lawsuit align with those circumstances in which PHLY would be required to defend MAA as an additional insured.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III. ANALYSIS

Plaintiffs' Motion for Partial Summary Judgment argues that this Court should enter declaratory judgment and find that Defendant is contractually obligated to represent Plaintiff in an ongoing legal dispute in accordance with its insurance provisions. (ECF No. 21). Declaratory judgment requires a Court to "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201. A declaratory judgment "shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* In this case, to enter declaratory judgment, the Court must analyze Maryland insurance law.

"A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). "In insurance contract disputes, Maryland follows the principle of lex loci contractus, which applies the law of the jurisdiction where the contract was made." *Id.* (citing *Allstate Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100, 101 (1992)). Because this Court exercises diversity jurisdiction and the insurance contract at issue was made in Maryland, Maryland law applies. *See Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375, 378 (4th Cir.

4

2015) ("we apply Maryland law because the Policy was delivered in Maryland and this diversity action was filed in the District of Maryland").

"[A]n insurance company has a duty to defend its insured for all claims which are potentially covered under an insurance policy." *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 104, 651 A.2d 859, 862 (1995) (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975)). In determining whether an insurance company has a duty to defend, Maryland courts apply a two-part inquiry:

> (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue.

*St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282, 285 (1981). In accordance with this analytical framework, the Court will assess the facts of this case in two parts.

### a. Policy Coverage

A court must "focus on the terms of the insurance policies themselves to determine the scope and limitations of their coverage. In construing the terms of the insurance contract, we must accord the terms their customary, ordinary, and accepted meaning." *Aetna*, 337 Md. at 104 (internal citations and quotations omitted). "If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said." *Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375, 379 (4th Cir. 2015). Of import here, in applying Maryland law and interpreting language of an insurance policy, the Fourth Circuit has stated that "'if the parties had intended coverage to be limited to vicarious liability, language clearly

5

embodying that intention was available.'" *Id.* at 380 (citing *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 255 (10th Cir. 1993)).

The "Commercial General Liability Coverage Form",[2] paired with the "Additional Insured" addendum, detail the insurance policy between PHLY and Chimes, Inc., which names and incorporates MAA as an "additional insured." (ECF No. 21, Ex. 7 at 9, 26, 29-30). As it relates to MAA, the policy covers legal obligations, including the duty to defend, related to "bodily injury" and "property damage" that takes place in the "coverage territory" and during the policy period. *Id.* Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at 21. The policy explicitly defines damages relating to "bodily injury" as those "claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" *Id.* More specifically, as the additional insured on this policy between PHLY and Chimes, MAA is covered for bodily injury "arising out of or relating to [Chimes'] negligence in the performance of [Chimes'] work for such person(s) or organization(s) that occurs on or after the effective date." *Id.* at 29. The policy provisions expressly exclude the duty to defend in cases of intended injury, contractual liability, liquor liability, workers' compensation, and employer's liability, among sixteen other categorical exclusions. *Id.* at 10-14, 34. The policy states that the insurance is "primary to and non-contributory with any other insurance maintained by the person or organization (Additional Insured), except for loss resulting from the sole negligence" of the additional insured. (ECF No. 21, Ex. 7 at 29).[3]

The plain language of this insurance policy indicates that PHLY has a duty to defend MAA in legal obligations related to bodily injury sustained as a result of the negligence of Chimes, Inc.,

---

[2] Form CG00010413.

[3] The submitted exhibits of the additional insured addendums include the effective date of May 22, 2017. (ECF No. 21, Ex. 7 at 29-30). Without objection from Defendant, the Court presumes that the language of the May 22, 2018, policy is identical.

in the Baltimore/Washington International Thurgood Marshall International Airport (BWI) airport ("coverage territory") during at least May 22, 2018, through May 22, 2019 ("policy period").[4] Defendant states that there must be allegations holding MAA "vicariously liable for Chimes' acts or omission" in order for additional insured coverage to attach to MAA. (ECF No. 22 at 1). Notably, however, the insurance policy does not include express language that limits coverage to only those claims alleging vicarious liability. If the parties "intended coverage to be limited to vicarious liability, language clearly embodying that intention was available." *Cap. City Real Est.*, 788 F.3d at 379. As such, the Court declines to declare that the policy is limited to cover only claims of vicarious liability. The Court next analyzes the underlying tort allegations to determine whether the additional insured insurance policy has been implicated in the second lawsuit.

  b. **Tort Allegations**

Even if the facts alleged in a tort suit do not fall squarely within the insurance policy, the insurer maintains the duty to defend if there is even the potential that the alleged tort(s) is covered under the policy. *Aetna*, 337 Md. at 104. Importantly, "an insurer may not use extrinsic evidence to contest coverage under an insurance policy if the tort suit complaint establishes a potentiality of coverage." *Id.* at 107. In contrast, an insured may rely on extrinsic evidence to "establish a potentiality of coverage under an insurance policy." *Id.* at 111. Ultimately, "where a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured." *Id.* at 107.

The complaint in the underlying second lawsuit alleges three counts of negligence under the theory of premises liability against MAA, Chimes, Inc., and Chimes Ltd. (ECF No. 21, Ex. 3). The plaintiff in the second lawsuit alleges that on September 18, 2018, she suffered bodily injury

---

[4] The exhibits illustrate that the policy was in effect at least beginning May 22, 2017. (ECF No. 21, Ex. 7 at 29-30).

and severe pain and mental anguish when she slipped and fell on water on a walkway in BWI as a result of the Defendants' negligence. *Id.* at 3-6. She said Defendants were negligent in "failing to monitor the area for defective conditions; failing to warn the Plaintiff of the hazardous condition of the walkway; failing to clean and make safe the parking area for invitees and workers; and in failing to maintain its premises in a safe and reasonable manner." *Id.* The language in each count is identical – the underlying suit contains the exact same factual allegations against each of the Defendants. *Id.*

In analyzing the terms of the insurance policy alongside the facts alleged in this underlying tort suit, PHLY has a duty to defend MAA. The plaintiff in the second lawsuit alleges bodily injury as a result of the negligence of Chimes, Inc., and MAA from an accident that occurred in the coverage area (BWI) within the policy period. As previously discussed, Defendant's misguided assertion that there is no duty to defend because there is no claim for vicarious liability is without merit. Even if PHLY's policy did limit MAA's coverage to vicarious liability claims, the allegations asserted here are identical as to MAA and Chimes, ultimately leaving room for a theory of vicarious liability.

Furthermore, to the extent that PHLY contends that MAA was independently negligent and liable for any damages, such assertion is better suited in a separate legal action pursuing indemnity. Here, however, PHLY is beholden to its contract with Chimes, Inc., which necessitates a duty to defend MAA as an additional insured for bodily injury sustained as a result of Chimes, Inc.; the underlying tort case plainly alleges facts that fall squarely within that policy.

Lastly, Defendant misconstrues the law in arguing that MAA was to provide extrinsic evidence "to support a potentiality that MAA's liability arises from or relates to Chimes' work." (ECF No. 22 at 2). As mentioned, Maryland law permits the insured to offer extrinsic evidence,

but it does not require the insured to rely on such. Even if it were unclear whether MAA would be independently liable, and thus casting uncertainty on PHLY's duty to defend, under Maryland law, any doubt is resolved in favor of MAA, the insured. *Aetna*, 337 Md. at 107. Because there is no genuine issue as to material fact, and Plaintiffs are entitled to judgment as a matter of law, partial summary judgment as to their claim of declaratory judgment is appropriate.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 21) is GRANTED. A separate Order follows.

Dated:  March 15, 2022                                                /s/
                                                                     J. Mark Coulson
                                                                     United States Magistrate Judge